IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROBERT M. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-2606 EFM/KGG |
| | ) | |
| THE UNIVERSITY OF KANSAS, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## **PRETRIAL ORDER**

Pursuant to Fed. R. Civ. P. 16(e), a pretrial conference was held in this case by telephone on June 4th, 2013, before the honorable Kenneth G. Gale, U.S. Magistrate Judge.

This pretrial order shall supersede all pleadings and control the subsequent course of this case. It shall not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. See Fed. R. Civ. P. 16(d); D. Kan. Rule 16.2(c).

## 1.    **APPEARANCES.**

The plaintiff, Robert M. Brown, appeared at the pretrial conference pro se. The defendants appeared through counsel, Sara L. Trower, Associate General Counsel and Special Assistant Attorney General.

2.      **NATURE OF THE CASE.**

This is a civil rights action under 42 U.S.C. 1983 arising from the alleged deprivation of due process of law regarding both property interests and fundamental liberty interests regarding dismissal of plaintiff from the University of Kansas, School of Law.  It also includes pendent state claims and requests for punitive damages.

3.      **PRELIMINARY MATTERS.**

a.      **Subject Matter Jurisdiction.** Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.   Based on Eleventh Amendment immunity and sovereign immunity, Defendants, University of Kansas, Kansas Board of Regents, and defendants named in their official capacities, object to jurisdiction to the extent that Plaintiff seeks any relief beyond prospective injunctive relief against those defendants.

b.      **Personal Jurisdiction.** The court's personal jurisdiction over the parties is not disputed.

c.      **Venue.** The parties stipulate that venue properly rests with this court.

d.      **Governing Law.** Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

Plaintiff's claims under 42 U.S.C. § 1983 are governed by Federal law, and Plaintiff's supplemental state claims for declaratory and injunctive relief,

gross and wanton negligence, tortious interference with a prospective business advantage, and  civil conspiracy  are governed by Kansas Law.

**4.    STIPULATIONS.**

  **a.**    The following facts are uncontroverted:

  1. The University of Kansas is a state educational institution.  *See* K.S.A. 76-711.

  2. The University of Kansas, a separate state agency, is funded in part by the State of Kansas.  *See* K.S.A. 76-712.

  3. The Kansas Board of Regents, provided for in Kan. Const., Art. 6 §§ 2, 3, and established by K.S.A. 74-3202a, controls and supervises the Kansas state educational institutions, including the University of Kansas.

  4. The University of Kansas, School of Law, is an academic unit within the University of Kansas, and it is located at 1535 W. 15th Street, Lawrence, Kansas.

  5. Gail Agrawal was the Dean of the KU School of Law from August 2006 until June 2010.  During that period, Dean Agrawal was an employee of the University of Kansas.

  6. In 2009-2010, Defendant Stephen W. Mazza was Associate Dean at the School of Law.  In June 2010, he was named the interim Dean of the School of Law, and in April 2011, he was named Dean of the School of

Law.   Stephen Mazza was an employee of the University of Kansas at all times in his various capacities with the KU School of Law.

7.  Andy Tompkins is the President and CEO of the Kansas Board of Regents with a business office located at 1000 SW Jackson Street, Suite 520, Topeka, Kansas.

8.  Bernadette Gray-Little, Chancellor of the University of Kansas, assumed her duties as Chancellor in August 2009, and as Chancellor is an employee of the University of Kansas.

9.  In 2009-2010, Joyce McCray Pearson was employed as a faculty member in the University of Kansas, School of Law, and as such she was an employee of the University.

10. During the 2009-2010 academic year, Joyce McCray Pearson was the Chair of the University Judicial Board.

11. In 2009-2010, Wendy M. Rohleder-Sook was employed in the University of Kansas, School of Law, as Associate Dean for Student Affairs.

12. The University of Kansas' University Senate Code is published online.

13. The University of Kansas' Faculty Senate Rules and Regulations are published online.

14. Art. 22 of the University's Code of Student Rights and Responsibilities defines "Non-Academic Misconduct."

15. Plaintiff Robert M. Brown ("Brown") filed an application for admission to the University of Kansas, School of Law, on April 8, 2009.

16. The application for admission to the University of Kansas, School of Law, filed by Brown included under the heading "Character & Fitness" following questions to which Brown answered "No:"

> c.  Have you ever been arrested for, charged with, or convicted of a felony, misdemeanor or infraction other than a traffic violation?  (include diversions, sealed or expunged records, and juvenile offenses)

> d.  Have you ever been arrested for, charged with, or convicted of a traffic violating involving alcohol or a controlled substance?  (include diversions, sealed or expunged records, and juvenile offenses)

> If you answered "yes" to any of these questions, please explain on a separate sheet or electronic attachment submitted with your application and provide the date, nature of the offense or proceeding, name and location of the court or tribunal, and disposition of the matter.

17. The application for admission to the University of Kansas, School of Law, filed by Brown included the following certification, which Brown acknowledged by his electronic submission of the application:

> I certify, that, to the best of my knowledge, the information stated in this application and in any supporting documents submitted is true and complete.  I understand that falsification, misrepresentation or failure to supply required information in connections with this application is sufficient cause for denial of my application or dismissal from the School of Law.  I understand that I have the duty to notify the Office of

Admissions if there are any changes in my answers after this application is submitted.

18. With his electronically submitted application to the University of Kansas, School of Law, Brown also submitted the "Certification Letter," which he signed, and which included the following statements:

> I certify that the information I have provided is true and complete; that I will notify the Office of Admissions immediately if there is any change in the information that I have provided in this application; that I am the author of the statements or additional information included with this application; and that I understand the statements made herein are the basis upon which my application will be decided. In the event that any information is subsequently found to be false, I understand that my admission may be voided and my matriculation canceled. I understand that I have a duty to notify the Office of Admissions in writing if there are any changes in my answers after this application is submitted.

> I understand that admission is conditional upon meeting the requirements stated in the University of Kansas School of Law catalog, and any further conditions expressed at the time of admission. The School of Law does not authorize nor is it bound by any requirements or conditions other than those communicated by the Office of Admissions.

19. On April 15, 2009, Brown was offered a spot on the University of Kansas, School of Law's waitlist.

20. On April 21, 2009, Robert Brown accepted the waitlist offer by submitting the Law School's standard form.

21. By letter dated May 17, 2009, Brown provided additional materials to supplement his application for admission to the School of Law, including

a statement about his specific interest in KU Law and an additional optional essay.

22. On August 19, 2009, Brown was offered admission to the KU Law fall 2009 entering class.

23. On August 20, 2009, Brown submitted a seat deposit fee waiver form to the KU School of Law and was admitted.

24. The first day of classes for the Fall 2009 academic term at the University of Kansas was August 20, 2009.

25. On August 27, 2009, after the start of classes at the University of Kansas, School of Law, Brown submitted a letter stating, "I would like to amend my law school application," and amending his answer to question 27, disclosing the following criminal convictions:

| Case No | Tribunal | Charge | Finding |
|---------|----------|--------|---------|
| 96DV290 | Jo Co Dist Ct | Domestic Battery | Guilty |
| 96DV740 | Jo Co Dist Ct | Domestic Battery | Guilty |
| 90???? | Jo Co Dist Ct | DUI | Guilty |
| 79???? | Shawnee Co | DUI | Guilty |

26. On August 27, 2009, in response to Brown's letter, he was asked to provide a further explanation regarding the criminal matters that he had disclosed on that date.

27. On September 11, 2009, Brown provided a letter in which he provided additional information concerning "the facts contained within [his] letter of August 27th, 2009."

28. On October 2, 2009, Wendy Rohleder-Sook e-mailed Robert Brown to advise him that additional charges ("12/05/94, Battery, dismissed by prosecutor; 12/21/94, Battery, dismissed by prosecutor; and 4/23/04, Criminal Trespass, dismissed by prosecutor") regarding him had been discovered, and asking him to provide written authorization to the Johnson County District Attorney's office to release full information and documents to the Law School regarding those charges, and an explanation for why he did not disclose those criminal matters on his application for admission or in his subsequent amendment.

29. On October 2, 2009, Robert Brown responded via e-mail to Ms. Rohleder-Sook and provided additional information concerning the charges she had noted in her e-mail.

30. On October 7, 2009, the Law School requested copies of records from the Johnson County District Court Clerk's Office.  Sometime thereafter, the District Court Clerk's Office provided a copy of the trial record for the prosecutions in the DV290 and DV740 domestic battery charges against Brown.

31. Plaintiff Brown sat for finals in December 2009.

32. Plaintiff Brown received grades for the Fall Semester of 2009.

33. On January 19, 2010, the 2008-2009 Law School Admissions Committee convened to consider the status of Mr. Brown's application and determined that they would have rejected his application if they had known of the criminal charges he failed to disclose.

34. On February 17, 2010, Wendy Rohleder-Sook filed with Associate Dean Stephen Mazza a letter with the reference "Allegation of Academic Misconduct:  Robert M. Brown," which outlined as a basis for the charge Mr. Brown's answers to questions 27.c. and 27.d. on his application for admission.

35. Mr. Brown responded to Ms. Rohleder-Sook's February 17, 2010, academic misconduct charge, in a response dated February 28, 2010.

36. A hearing Panel convened to consider the charge of academic misconduct against Brown issued a Memorandum decision dated May 3, 2010, dismissing the academic misconduct complaint against Brown.

37. In the School of Law's hearing panel's May 3, 2010 Memorandum decision, the panel stated, in part:

> The complaint fails to allege a violation of Section 2.6.1 or, to use the words of U.S.S.R. Section 6.5.3.1(d), any other University rule.  Therefore, we hereby dismiss Dean Wendy Rohleder-Sook's complaint of February 17, 2010"

38. Brown began attendance at his 2010 summer session Law School class.

39. In a letter dated May 25, 2010, Dean Gail B. Agrawal advised Mr. Brown that she planned to dismiss him from the School of Law effective June 8, 2010, "for falsification, misrepresentation, and failure to supply complete, accurate and truthful answers to [his] application for admission to the School of Law." Dean Agrawal's letter further advised Mr. Brown: "If you believe that this action is inappropriate or that there are mitigating factors that I should consider before dismissing you, then you must provide me with a written response to this letter by 2:00 p.m. on June 3, 2010."

40. In a letter dated May 27, 2010, Brown provided to Dean Agrawal his "written response to [her] letter dated May 26, 2010 [sic]" and in that letter "request[ed] a personal meeting with [her] to discuss this matter."

41. On May 28th, 2010, Agrawal responded to Brown's request for a personal meeting via email, stating: "I see no need to meet with you, and therefore decline your request for a meeting."

42. In a letter dated May 31, 2010 addressed to the "Chair of the University Judicial Board," Brown submitted a "Request for Initial Hearing before the Judicial Board Pursuant to 6.4.3.1(b) of the University Senate Rules

and Regulations and Election to Invoke the Jurisdiction of the University Judicial Board Pursuant to University of Kansas Law School Dispute Resolution Procedure Section (A)(4)(c)."

43. In a letter dated May 31, 2010 address to the "Chair of the University Judicial Board," Brown also submitted a "Request for Jurisdictional Ruling pursuant to 6.5.2.1 of the University Senate Rules and Regulations."

44. In a letter dated June 3, 2010, Joyce McCray Pearson, Chair University Judicial Board, informed Brown:

> I have reviewed your requests for a jurisdictional ruling and an initial hearing, both dated May 31, 2010.  I have also reviewed University Regulations to determine whether they authorize the Judicial Board to exercise jurisdiction in your case.  I regret to inform you that I have found no basis for jurisdiction by the Judicial Board.

> The Faculty Senate Rules and Regulations (FSRR) 2.1.1 gives the authority for policies on admission to the faculties of the various schools and the College (see excerpt below).

> .        .        .        .

> Admission standards lie within the jurisdiction of the schools and College because the academic evaluation lies within the individual department and the professors who have expertise in that field

> Pursuant to University Senate Rule and Regulation 6.5.3.1(c), I hereby dismiss your petition.  I have concluded that the Judicial Board lacks jurisdiction over the subject matter.

This Judicial Board decision is the final determination of this matter by the university.  If you wish to proceed outside the university, Chancellor Bernadette Gray-Little is the agency officer who should receive any service or subsequent petition for judicial review of this action.

45. In November of 2009, Chancellor Bernadette Gray-Little created an Admissions task force to pursue strategic initiatives of the University of Kansas in the area of Student Success.

46. Chancellor Gray-Little's charge to the Admissions task force stated that the overarching goal of this enrollment planning initiative was student success.

47. The University Director of the Office of Admissions has no record of the School of Law having filed with it the School of Law's policies for admission and readmission.

48. Plaintiff Brown is the only student whom defendant Mazza is aware has been removed from the School of Law after filing an amended application.

49. In response to interrogatories regarding involvement with other amended applications, defendant Joyce McCray Pearson testified that she had never been involved in any other situation involving an amended application to the School of Law.

50. Gail Agrawal's June 7, 2010 dismissal letter stated, in part, that the School of Law's transcript would show that plaintiff Brown's dismissal from the Law School was based on "falsification, misrepresentation, and failure to supply required information on [his] application to the School of Law."

51. During the pendency of the School of Law's Allegation of Academic Misconduct, Defendant Mazza communicated with plaintiff Brown via emails that had as the subject line: "Disciplinary Procedures."

52. Dean Mazza testified that he is not aware of any admissions policies of the School of Law other than those posted publicly on the School of Law's website.

53. The School of Law's Honor Code, in part, states:

> IV. Sanctions:
>
> .      .      .      .
>
> 8. Permanent expulsion from the School of Law.  Permanent expulsion should be reserved only for the most serious offenses, especially because disciplinary expulsion of a law student from a member of the Association of the American Law Schools prevents that student from enrolling in any other member schools.

54. The University of Kansas School of Law Dispute Resolution procedure, states, in part:

> Section 2:  Rights of Parties

(a) The Dispute Resolution Procedures shall be applied so as to protect the due process and other rights of parties to the dispute.

(b) Parties to the dispute shall receive reasonable notice of any charges or allegations against them, of the time and place of any hearing, and of the material issues to be determined.

(c) With due regard for the authority of the hearing body to exclude irrelevant, immaterial, cumulative or improper evidence, parties to the dispute shall have a full and fair opportunity to present their version of events, present and cross examine witnesses, or otherwise plead their case, and may be represented by counsel at their own expense.

(d) Parties to the dispute are entitled to a decision by an impartial hearing body based upon the record of the proceedings. Members of the hearing body shall not communicate with each other or with any other person on matters material to the dispute except through the hearing process.

(e) The hearing body and others administering the dispute resolution procedures shall respect the confidentiality of the proceedings. Confidentiality does not apply to information that is relevant to the investigation or prosecution of a disciplinary action by the Disciplinary

Administrator of the Kansas Bar , any matter relating to the admission of an attorney to the bar of any state or federal jurisdiction or court, or in any case where disclosure is required by court order or other legal authority.

55. The University of Kansas Student Code of Rights and Responsibilities states, in part, that it "applies to all university students, administration, faculty and staff."

56. Dean Agrawal testified she was unaware of any admissions policies of the School of Law other than those published on the School of Law web site.

57. The University of Kansas' University Senate Code states, in part, that it "applies to faculty, staff and students."

58. The Faculty Senate Rules and Regulations, in pertinent part, state:

> 2.1.1.  Policies for admission and readmission are established by the faculties of the various schools or the College, within the parameters of state laws and Regents regulations and within guidelines set by the Faculty Senate.  A statement of such requirements shall be published or filed with the Director of Admissions and the Secretary of the Faculty Senate. For undergraduate admission, implementation of these policies by the Director of Admissions includes the initial evaluation of credentials presented by applicants covering academic work done elsewhere.

59. McCray Pearson testified that at the time of ruling on Brown's requests before the Judicial Board, she had never seen Wendy Rohleder-Sook's February 17, 2010 academic misconduct complaint against Brown.

60. When Brown's notice of pending litigation arrived in the Chancellor's office, it was delivered to the Office of General Counsel, and it was the office of General Counsel that responded.

61. Gail Agrawal consulted with the Office of General Counsel in composing her June 7, 2010 letter of dismissal to Brown.

62. Defendant Mazza testified he did not pursue disciplinary measures against Brown.

63. Brown was academically successful as a law student at the University of Kansas.

64. The School of Law permitted Brown to enroll in the Fall 2009, Spring 2010, Summer 2010, and Fall 2010 sessions before his removal from the School of Law.

**b.** The following documents constitute business records within the scope of Fed. R. Evid. 803(6) and may be introduced in evidence during trial without further foundation, subject to objections based solely on grounds of relevancy:

- All bates labeled documents provided by the parties and attachments thereto.

- All Deposition Exhibits

**c.**     Copies of exhibits may be used during trial in lieu of originals.

**d.**     The parties have stipulated to the admission of the following trial exhibits:

(1)     Brown Deposition Ex. 1, 2009 Application for Admission

(2)     Brown Deposition Ex. 2, Law School wait list documents

(3)     Brown Deposition Ex. 3, August 27, 2009 letter to Wendy Rohleder-Sook

(4)     Brown Deposition Ex. 4, Brown Petition for Writ of Certiorari

(5)     Brown Deposition Ex. 5, September 11, 2009 letter to Wendy Rohleder-Sook

(6)     Brown Deposition Ex. 6, October 2, 2009 e-mail exchanges between Brown and Rohleder-Sook

(7)     Brown Deposition Ex. 7 (Also Depo. Ex. 9), May 3, 2010 Memorandum

(8)     Brown Deposition Ex. 8, May 25, 2010 letter to Brown from Dean Agrawal

(9)     Brown Deposition Ex. 9, May 27, 2010 letter from Brown to Dean Agrawal

(10)     Brown Deposition Ex. 10, June 7, 2010 letter Dean Agrawal to Brown

(11)   Brown Deposition Ex. 11, June 3, 2010 letter McCray Pearson to Brown

(12)   Depo. Ex. 1, University of Kansas School of Law Dispute Resolution Procedure

(13)   Depo. Ex. 2, February 17, 2010 Allegation of Academic Misconduct: Robert M. Brown

(14)   Depo. Ex. 3, Code of Student Rights and Responsibilities (Lawrence Campus)

(15)   Depo. Ex. 5, KU Law Admissions Frequently Asked Questions

(16)   Depo. Ex. 6, University Senate Code

(17)   Depo. Ex. 7, University Senate Rules and Regulations

(18)   Depo. Ex. 8, February 28, 2010 response from Brown re: Allegations of Academic Misconduct dated February 17, 2010

(19)   Depo. Ex. 11, April 14-18, 2010, e-mail exchanges between Mazza and Brown

(20)   Depo. Ex. 12, April 14-15, 2010, e-mail exchanges between Mazza and Brown

(21)   Depo. Ex. 16, April 16, 2010 Response to Robert Brown's Procedural Objections

(22)   Depo. Ex. 22, Faculty Senate Rules and Regulations

(23)    Depo. Ex. 24, May 27-28, e-mail exchange between Brown and Agrawal

(24)    Depo. Ex. 27, May 31, 2010, Request for an Initial Hearing before the Judicial Board Pursuant to 6.4.3.1(b) of the University Senate Rules and Regulations and Election to Invoke the Jurisdiction of the University Judicial Board Pursuant to University of Kansas Law School Dispute Resolution Procedure Section (A)(4)(c)

(25)    Depo. Ex. 28, May 31, 2010, Request for Jurisdictional Ruling Pursuant to 6.5.2.1 of the University Senate Rules and Regulations

(26)    Depo. Ex. 29, Judicial Board Hearings on Appeal

(27)    Depo. Ex. 32, April 16, 2010 Response to Robert Brown's Procedural Objections

(28)    Depo. Ex. 33, Transcript excerpts documents provided to admissions committee

(29)    Depo. Ex. 34, Transcript excerpts that were not presented to the admissions committee

(30)    Depo. Ex. 37, Honor Code of the University of Kansas School of Law

**e.**    At trial, witnesses who are within the subpoena power of the court and who are officers, agents, or employees of the parties need not be formally subpoenaed to

testify, provided that opposing counsel is given at least seven (7) business days advance notice of the desired date of trial testimony. For purposes of this entire pretrial order, the calculation of "business days" does not include Saturday, Sunday, or any legal holiday as defined by Fed. R. Civ. P. 6(a)(4).

**f.**      By no later than 5 p.m. each day of trial, counsel shall confer and exchange a good faith list of the witnesses who are expected to testify the next day of trial.

**g.**      Not used.

5.   **FACTUAL CONTENTIONS.**

a.      **Plaintiff's Contentions.**

On April 8th, 2009, Plaintiff Brown applied to the University of Kansas School of Law.  He was accepted and began matriculation in August of 2009.  At the time of filing his application, Brown had believed that his prior criminal convictions, none of which were less than 13 years old, were too remote to require disclosure.

During the first week of Law School, both defendant Wendy Rohleder-Sook and other speakers for the entering class made crystal clear that all convictions, no matter how remote, were required to be disclosed.  As a result, plaintiff Brown immediately came forward and amended his application on August 19th, 2009 to disclose all prior criminal convictions.

Brown amended less than two weeks after he enrolled, and before the School of Law had collected any tuition from him.  In his amendment and the related documents provided, Brown disclosed every criminal conviction which was not a minor traffic violation or citation.

After becoming aware of the amendment, the School of law proceeded to collect Brown's tuition against a student loan, and allowed him to continue his classes.

Subsequently, defendant Rohleder-Sook made further inquiries of Brown and asked for a more detailed explanation.  Brown timely provided the

explanation, and signed a release so that Rohleder-Sook could investigate with the appropriate authorities. Rohleder-Sook's investigation was complete by October 7th of 2009.

Subsequent to Dean Rohleder-Sook's receipt of all information she required to make a decision and the completion of her investigation, but prior to the filing of any complaint, plaintiff Brown continued in and satisfactorily completed all the requirements for his courses for the Fall 2009 semester, sat for Finals in December of 2009, received grades for his Fall 2009 semester courses, was enrolled by the Admissions Office, which is headed by Dean Rohleder-Sook, for the Spring 2010 semester, was charged tuition for the Spring semester of 2010 by the Admissions office, and incurred substantial student debt to pay the tuition for the Spring semester of 2010. Both Brown's enrollment for the Spring semester and the collection of his tuition against his student loan were undertaken entirely by the admissions office, and did not require so much as a mouse click on plaintiff Brown's part. By these actions the University of Kansas ratified its contract with plaintiff Brown, and any right they may have had to rescind became forfeit.

In January of 2010, Brown began classes for the spring semester with no indication that his amended application had not been accepted.

On February 17, 2010, Rohleder-Sook filed a complaint with defendant Mazza. The complaint was entitled "Allegation of Academic Misconduct" ("the Complaint").

The Complaint stated as its basis in university law that it was filed "pursuant to Section 4 of the University of Kansas School of Law Dispute Resolution Procedure", and arose from Brown's written amendment to his law school application on August 19th of 2009.

On February 23rd, the Complaint was delivered to plaintiff Brown by defendant Mazza, who stated that the admissions office was seeking his permanent dismissal from the School of Law. Dean Mazza stated at this initial meeting that this was an "Article 22" issue, and provided Brown with a copy of the complaint and a copy of the University of Kansas School of Law Dispute Resolution Procedure.

On February 28th, Brown provided his written statement of intent to file a response to the Complaint which also included several procedural

objections to the complaint. In his February 28th letter, Brown put the School of Law on notice that the Complaint did not specify the provision(s) of the Faculty Code of Conduct, University Senate Code, The University Senate Rules and Regulations, the Code of Student Rights and Responsibilities, or other applicable rule, regulation, or law allegedly violated, as required by U.S.R.R. 6.3.1.1, that the Complaint did not allege Academic Misconduct, and that permanent removal was foreclosed by the Kansas Common Law Doctrines of Waiver and Estoppel, since the law school had acted in a manner which strongly evidenced acceptance of the amended application and waiver of the bases contained in the Complaint by his subsequent re-enrollment and collection of tuition, and therefore the provisions of the U.S.R.R. were superseded as described in U.S.R.R. 6.1.6. Brown also argued that permanent removal was arbitrary because others who amended (and were therefore similarly situated) were not similarly punished.

On March 2, 2010, Dean Mazza notified Brown via E-mail that dispute resolution was not an option in his case.  All of Brown's subsequent requests for mediation or dispute resolution were denied by the University.

On March 4th, 2010, Brown requested redacted copies of all prior decisions made pursuant to the Law School Dispute Resolution Procedure that were based on the same or similar allegations of fact as those charged in the February 17, 2010 complaint pursuant to Section 14 of the School of Law Dispute Resolution Procedure.  This request was denied.

Brown heard nothing regarding the Complaint for 20 days. Then, on March 24th, 2010, Dean Mazza informed Brown via email, "We're still in the process of drafting written responses to your procedural objections. We hope to have those completed soon. I'm also in the process of selecting the hearing panel."

Brown heard nothing regarding the complaint for another 21 days. On April 14th, 2010, Dean Mazza communicated with Brown by email that Dean Wendy would file a response very soon denying all his procedural objections, and that we would "need to hold the hearing sometime next week."  In the same email, Mazza stated "I understand that this process has been protracted. We have not run across this situation before and, in an effort to preserve your due process rights to the greatest extent possible, we've had to consider matters very carefully and that has caused delay in processing the complaint."

On April 16th, 2010, more than six weeks after receiving Brown's procedural objections, Dean Rohleder-Sook provided a response which bore her signature, but on which defendant Mazza had prepared the initial draft and had collaborated with Rohleder-Sook.

On April 19th, Mazza provided Brown with the name of the chair of a hearing panel which had been selected for the complaint, and explained that all subsequent communications regarding this matter should be between Brown and the panel.

Brown studied and sat for finals for the Spring Semester of 2010. He also enrolled for the Summer semester and was allowed to begin classes during the Summer.  Brown was also allowed to enroll for the Fall Semester of 2010.  Meanwhile, he heard nothing about the complaint for another 37 days.

On May 3rd, 2010, the hearing panel considered Brown's procedural objections and dismissed the School of Law's complaint.

On May 26th, 2010, Brown received a letter from Law School Dean Gail Agrawal notifying him that she planned to dismiss him from Law School effective June 8th, 2010.

Brown responded on May 27th, 2010, that his dismissal in this manner was inappropriate because it violated the Code of Student Rights and Responsibilities as promulgated by the University Senate, and more particularly Articles 2(E) and 2(F).

Brown's response went on to state "Pursuant to the student bill of rights, I respectfully request written notice of the nature and cause of the charges, including what published Student Senate, University Senate, University or Regents rule or regulation you believe has been violated. By this writing, I also indicate that I wish to preserve my right to a fair hearing before an impartial hearing body which includes the assistance and participation of my legal counsel and the right to confront witnesses against me, and all other rights I may have under any and all Student Senate, University Senate, University or Regents rules. These are due process rights to which I am entitled as a matter of law. The summary dismissal you contemplate would unlawfully bypass them."

Brown also requested a face to face meeting with Dean Agrawal to discuss the matter further.  On May 28th, 2010, Agrawal responded to my request via email, stating "I see no need to meet with you, and therefore decline your request for a meeting."

On May 31, 2010, Brown filed a Request For an Initial Hearing before the Judicial Board pursuant to 6.4.3.1(b) of the University Senate Rules and Regulations and Election to Invoke the Jurisdiction of the University Judicial Board Pursuant to University of Kansas Law School Dispute Resolution Procedure Section (A)(4)(c).  On that same day, he also filed a Request For a Jurisdictional Ruling Pursuant to 6.5.2.1 of the University Senate Rules and Regulations.  Both requests were filed with Defendant Joyce McCray Pearson, the chair of the University Judicial Board. Brown's requests were immediately forwarded by McCray Pearson to Agrawal and Mazza, who instructed general counsel to craft a response for McCray Pearson denying Brown's requests.

On June 7th, 2010, Agrawal sent Brown a letter officially dismissing him permanently from the University of Kansas School of Law.   Gail Agrawal's June 7, 2010 dismissal letter stated that the School of Law's transcript would shoe that plaintiff Brown was dismissed for "falsification, misrepresentation, and failure to supply required information."  This same letter also informed Brown that he could appeal to the office of the Chancellor, but this appeal was immediately handed back to the office of General Counsel in much the same fashion as Brown's appeals to the Judicial Board had been.

Although due process and a hearing was originally offered to Brown, after dismissal of the disciplinary complaint was dismissed the School of law chose to dispense with the need for due process.  Brown did not receive a hearing or any of the process guaranteed by the University of Kansas Dispute Resolution Procedure, the University Senate Code, the University Senate Rules and Regulations, and the Student Code of Rights and Responsibilities.

**b.     Defendant's Contentions.**

On April 8, 2009, Mr. Brown submitted an application for admission to the

University of Kansas, School of Law.   That application, under the heading

"Character and Fitness," contained question 27, which included the following questions to which Brown answered "No:"

> c.  Have you ever been arrested for, charged with, or convicted of a felony, misdemeanor or infraction other than a traffic violation? (include diversions, sealed or expunged records, and juvenile offenses)

> d.  Have you ever been arrested for, charged with, or convicted of a traffic violating involving alcohol or a controlled substance?  (include diversions, sealed or expunged records, and juvenile offenses)

The application for admission to the University of Kansas, School of Law, filed by Brown included the following certification, which Brown acknowledged by his electronic submission of the application:

> I certify, that, to the best of my knowledge, the information stated in this application and in any supporting documents submitted is true and complete.  I understand that falsification, misrepresentation or failure to supply required information in connections with this application is sufficient cause for denial of my application or dismissal from the School of Law.  I understand that I have the duty to notify the Office of Admissions if there are any changes in my answers after this application is submitted.

With his electronically submitted application to the University of Kansas, School of Law, Brown also submitted the "Certification Letter," which he signed, and which included the following statements:

> I certify that the information I have provided is true and complete; that I will notify the Office of Admissions immediately if there is any change in the information that I have provided in this application; that I am the author of the statements or additional information included with this application; and that I understand the statements made herein

are the basis upon which my application will be decided.  In the event that any information is subsequently found to be false, I understand that my admission may be voided and my matriculation canceled.  I understand that I have a duty to notify the Office of Admissions in writing if there are any changes in my answers after this application is submitted.

I understand that admission is conditional upon meeting the requirements stated in the University of Kansas School of Law catalog, and any further conditions expressed at the time of admission.  The School of Law does not authorize nor is it bound by any requirements or conditions other than those communicated by the Office of Admissions.

On April 15, 2009, Brown was offered a spot on the University of Kansas, School of Law's waitlist.  On April 21, 2009, Robert Brown accepted the waitlist offer by submitting the Law School's standard form.  By letter dated May 17, 2009, Brown provided additional materials to supplement his application for admission to the School of Law, including a statement about his specific interest in KU Law and an additional optional essay.

On August 19, 2009, Brown was offered admission to the KU Law fall 2009 entering class.  On August 20, 2009, Brown submitted a seat deposit fee waiver form to the KU School of Law and was admitted.  The first day of classes for the Fall 2009 academic term at the University of Kansas was August 20, 2009.

On August 27, 2009, after the start of classes at the University of  Kansas, School of Law, Brown submitted a letter stating, "I would like to amend my law

school application," and amended his answer to question 27, disclosing the following criminal convictions:

| Case No | Tribunal | Charge | Finding |
|---------|----------|--------|---------|
| 96DV290 | Jo Co Dist Ct | Domestic Battery | Guilty |
| 96DV740 | Jo Co Dist Ct | Domestic Battery | Guilty |
| 90???? | Jo Co Dist Ct | DUI | Guilty |
| 79???? | Shawnee Co | DUI | Guilty |

On August 27, 2009, in response to Brown's letter, he was asked to provide a further explanation regarding the criminal matters that he had disclosed on that date.  On September 11, 2009, Brown provided a letter in which he provided additional information concerning "the facts contained within [his] letter of August 27th, 2009."

On October 2, 2009, Wendy Rohleder-Sook, Associate Dean for Student Affairs,  e-mailed Brown to advise him that additional charges ("12/05/94, Battery, dismissed by prosecutor; 12/21/94, Battery, dismissed by prosecutor; and 4/23/04, Criminal Trespass, dismissed by prosecutor") regarding him had been discovered, and she asked him to provide written authorization to the Johnson County District Attorney's office to release full information and documents to the Law School regarding those charges, and that he provide an explanation for why he did not disclose those criminal matters on his application for admission or in his subsequent amendment.

In a letter dated May 25, 2010, Dean Gail Agrawal advised Mr. Brown that she planned to dismiss him from the School of Law effective June 8, 2010, "for falsification, misrepresentation, and failure to supply complete, accurate and truthful answers to [his] application for admission to the School of Law."  Dean Agrawal's letter further advised Mr. Brown:  "If you believe that this action is inappropriate or that there are mitigating factors that I should consider before dismissing you, then you must provide me with a written response to this letter by 2:00 p.m. on June 3, 2010."

Brown provided a written response to Dean Agrawal dated May 27, 2010. In a letter dated June 7, 2010, Dean Agrawal, informed Brown she had considered the information contained in his May 27, 2010 response, and that he was dismissed from the School of Law "based on falsification, misrepresentation and failure to supply the required information to support your admission to the School of Law."

Defendants deny that Mr. Brown's rights were violated.

**6.**      **THEORIES OF RECOVERY.**

**a.**      **List of Plaintiff's Theories of Recovery.** Plaintiff asserts that he is entitled to recover upon the following alternative theories:

- 42 U.S.C. § 1983 Procedural Due Process Deprivation Regarding Plaintiff's Liberty And Property Interests In Continued Enrollment (Count 1)

- 42 U.S.C. § 1983 Substantive Due Process claim for violation of Plaintiff's Right To Pursue A Lawful Calling Of His Own Choosing (Count 2)

  o **Parties' Comments with respect to Counts 1 & 2**:

    - How Counts 1 & 2 are described above is consistent with the labeling and description of those Counts in Plaintiff's Complaint.

    - Plaintiff has stated that he believes that he was mistaken regarding procedural due process and substantive due process at the time of his drafting of the Complaint.  He now believes that Counts 1 & 2 are both procedural due process claims, which he has described as follows in discussion with Defendants' counsel:

      - "I believe all the claims under counts 1 and 2 are subject to the same elements, since the same due process rights are afforded to both fundamental and contract rights.  These are the rights and interests.

        o Fundamental Right to Continued Enrollment at a State University

        o Fundamental Right to Pursue an Avocation of my own Choosing (Since disciplinary expulsion eliminates the possibility of my attendance at any other AAIA school)

        o Contract Right to Continued Enrollment at the University of Kansas School of Law (Based on offer, acceptance, estoppel, and provisions in Published University Policies and Procedures since the enrollment contract is not an integrated agreement)

29

     ○   Contract Right to the Due Process Promised in the DRP [Law School Disciplinary Resolution Process] (Based on Reliance and Promissory Estoppel)"

     ■   Counsel for Defendants objects to Plaintiff's reframing of his Complaint at this late date because it amounts to an attempt to amend his Complaint after the close of all the discovery done in the case.   Plaintiff moved to amend Count 2 to allege a violation of procedural due process.  That motion is GRANTED over defendants' objection.

- State Claim For Injunctive Relief Pursuant To K.S.A. 60-902 (Count 4 Of Complaint)

- State Claim For Gross And Wanton Negligence (Count 5 Of Complaint)

- State Claim For Tortious Interference With A Prospective Business Advantage (Count 6 Of Complaint)

- State Claim For Civil Conspiracy (Count 8 Of Complaint)

- Federal Claim For Punitive Damages (Counts 1 And 2 Of Complaint)

- State Claim For Punitive Damages (Counts 5, 6, And 8 Of Complaint)

Plaintiff Does Not Feel Sufficient Evidence Was Adduced During Discovery To Substantiate His Claim On Complaint Of Abuse Of Process, And Plaintiff Hereby Abandons That Claim.

**b.**    **Essential Elements of Plaintiff's First and Second Theories of Recovery (i.e., 42 U.S.C. § 1983 Procedural Due Process Deprivation Regarding Plaintiff's Liberty And Property Interests In Continued Enrollment and Right to Pursue a Lawful Calling of his Own Choosing)**  Subject to the court's determination of the law

that applies to this case, the parties agree that, in order to prevail on theory of recovery for a procedural due process claim, whatever that claim is ultimately determined to be by the Court after consideration of the parties' above Comments with Respect to Counts 1 & 2, plaintiff has the burden of proving the following essential elements:

1. That plaintiff had a legitimate claim of entitlement to his continued enrollment in the School of Law;

2. That plaintiff was dismissed from the Law School;

3. That, before plaintiff's dismissal from the Law School, plaintiff was not given a hearing, told of the reasons for his dismissal, or given an opportunity to contest the reasons for his dismissal;

4. That defendant acted with deliberate indifference to his constitutional right when defendant failed to give plaintiff a hearing, tell him of the reasons for his dismissal, or give him an opportunity to contest the reasons for his dismissal, and

5. That as a result of his dismissal from the Law School, plaintiff suffered damage.

**Parties' comment:**  The above elements are for the claim of continued enrollment.  The parties agree that the elements stated in general terms would be as follows, for his liberty interest claim in pursuing an avocation of his own choosing and his property interest claims:

1. Plaintiff's interest in continued enrollment in the KU Law School derived from Kansas contract law, his interest in being afforded the process provided him under University policies, and his interest in pursuing an avocation of his own choosing  are  constitutionally protected property or liberty interests;

2. Plaintiff's interest in continued enrollment in the KU Law School derived from Kansas contract law, his interest in being afforded the process provided him under University policies, and his interest in pursuing an avocation of his own choosing  were violated when he was dismissed from the KU Law School;

3. That, before being dismissed from the KU Law School, plaintiff was not given a hearing, told of the reasons for the action, or given an opportunity to contest the reasons for the action, or given other constitutionally required process;

4. That defendant acted with deliberate indifference to his constitutional right when defendant failed to give plaintiff a hearing, tell him of the reasons for his dismissal, give him an opportunity to contest the reasons for his dismissal, or give him other constitutionally required; and (**Comment:  Mr. Brown does**

**not believe that deliberate indifference as stated in this element is required based on *Wood v. Strickland*, 420 U.S. 308, 321-322 (1975))**

5. That as a result of Mr. Brown's dismissal from the KU School of Law, plaintiff suffered damage.

c.     **Essential Elements of Plaintiff's Fourth Theory of Recovery (i.e., State Claim For Gross And Wanton Negligence)**  Subject to the court's determination of the law that applies to this case, the parties agree that, in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements:

1. The Defendant owed a duty to the plaintiff;

2. That, there was an act or omission by the Defendant that breached that duty;

3. Plaintiff was injured as a result of that breach of duty;

4. Defendant's act or omission proximately caused Plaintiff's injury; and

5. Defendant acted in such a manner as to demonstrate that Defendant knew or should have known of the imminence of harm that would result to Plaintiff as a result of the Defendant's act or omission and acted with a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act or omission.

d.     **Essential Elements of Plaintiff's Fifth Theory of Recovery (i.e., State Claim For Tortious Interference With A Prospective Business Advantage)**  Subject to the court's determination of the law that applies to this case, the parties agree that, in

order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements:

1. There existed of a business relationship or expectancy with the probability of future economic benefit to the plaintiff

2. The defendant knew of the relationship or expectancy

3. Except for the conduct of the defendant, the plaintiff was reasonably certain to have continued the relationship or realized the expectancy

4. There was intentional misconduct by the defendant

5. Damages suffered by the plaintiff as a result of defendant's misconduct

6. Defendant's misconduct was intentional and without reasonable justification

**e.      Essential Elements of Plaintiff's Sixth Theory of Recovery (i.e., State Claim For Civil Conspiracy)**   Subject to the court's determination of the law that applies to this case, the parties agree that, in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements:

1. The individual defendants, Mazza, Agrawal, McCray Pearson and Rohleder-Sook had a meeting of the minds and agreed to dismiss Brown from the University of Kansas School of Law;

2. Mazza, Agrawal, McCray Pearson and Rohleder-Sook (describe the alleged unlawful overt acts) in furtherance of their agreement to dismiss Brown;

3. The individual defendants' acts described above were unlawful;

4.  Brown was injured as a result of the acts of defendants;

5.  Brown suffered damages as the proximate result the Defendants' unlawful acts.

**f.  Essential Elements of Plaintiff's Seventh Theory of Recovery (i.e., Federal Claim For Punitive Damages)**  Subject to the court's determination of the law that applies to this case, the parties agree that, in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements:

1.  The defendant acted with malice or with reckless or callous indifference to plaintiff's federally protected rights

**g.  Essential Elements of Plaintiff's Eighth Theory of Recovery (i.e., State Claim For Punitive Damages)**  Subject to the court's determination of the law that applies to this case, the parties agree that, in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements:

1.  The defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice.

**7.  DEFENSES.**

**a.  List of Defendant's Defenses and Affirmative Defenses.** Defendant asserts the following defenses and affirmative defenses:

(1)  To the extent that Plaintiff seeks any relief other than injunctive relief on his federal claims, the State Defendants are immune from suit based on Eleventh Amendment Immunity and sovereign immunity.

(2)     Plaintiff's claims fail to state or raise a substantial federal question and, as such, plaintiff's claims fail as a matter of law and/or for the lack of jurisdiction.   Specifically, Plaintiff cannot show that he has a fundamental constitutional right to pursue the lawful calling of practicing law, and, therefore fails to state a substantive due process claim.

(3)     At all times material hereto Defendants acted in good faith and within their rights as state employees.

(4)     Plaintiff's claims are barred by the lack of mutuality, mutual assent, insufficient consideration and/or lack of consideration.

(5)     Plaintiff cannot establish a property or liberty interest in his continued enrollment in the University of Kansas School of Law.

(6)     Plaintiff cannot establish a liberty interest that was implicated as a result of his dismissal from the School of Law for failure to disclose material information concerning his prior criminal record on his application for admission.

(7)     Plaintiff's claims fail pursuant to the doctrine of collateral estoppel.

(8)     Plaintiff has failed to mitigate his damages.

(9)     Plaintiff's claims are barred by the doctrines of waiver and estoppel.

(10)    Defendants are entitled to qualified immunity.

(11)    Defendants are immune from suit under the Kansas Tort Claims Act.

**b.      Essential Elements of Defendant's Affirmative Defense.** Subject to the court's determination of the law that applies to this case, the parties agree  that, in order to prevail on the following affirmative defenses, defendant has the burden of proving the following essential elements:

(1) Failure to Mitigate Damages – <u>Pattern Instructions Kansas</u> 4th, No. 124.18 provides the following instruction for Mitigation of Loss:

> If you find that the plaintiff is entitled to recover damages, then in fixing the amount of damages you should not include any loss that he could have prevented by reasonable care and diligence.

Under this instruction, it will be the defendants' burden to prove that Mr. Brown failed to use reasonable care and diligence in limiting his damages.

(2)  Affirmative defense of equitable estoppel -  Plaintiff will be estopped from asserting his claims against defendants, if defendants prove:

First, that Mr. Brown made a false representation or concealment of material facts in his application for admission to the KU School of Law;

Second, defendants lacked knowledge of the material fact;

Third, Mr. Brown intended that the KU School of Law officials act on his false representations; and

Fourth, that the defendants KU School of Law officials relied on the false representation or concealment to the KU School of Law's prejudice or injury.

**(<u>Comment</u>:   Mr. Brown believes the defendants have waived their right to**

**assert this defense by sleeping on their rights after being promptly made aware of the facts allegedly concealed, pursuant to <u>Rex v. Warner</u>, 183 Kan. 763, 772 (1959)).**

(3) Kansas Tort Claims Act Immunity – Defendants are immune from liability under K.S.A. 75-6104(e), for "any claim based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved.

(4) Qualified Immunity – Under the qualified immunity analysis:

The court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. Qualified immunity applies unless the official's conduct violated such a right. *Anderson* v. *Creighton*, 483 U. S. 635.

8.    **FACTUAL ISSUES.**

One or more of the parties believe that the following material issues will need to be resolved at trial by the trier of fact if summary judgment is not granted:

- Whether defendants acted appropriately in regards to the dismissal of Mr. Brown from the School of Law

- Whether plaintiff suffered damages as a result of one or more of the defendant's conduct, and if so, the nature and extent of those damages.

## 9. LEGAL ISSUES.

One or more of the parties believe that the following are the significant legal or evidentiary issues that will need to be resolved by the court in this case, whether on summary judgment motion or at trial:

a.  Whether the Eleventh Amendment and sovereign immunity bar an award of damages on Plaintiff's § 1983 claims against the State defendants, including those individuals named in their official capacity.

b.  Whether Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims.

c.  In light of *Wood v. Strickland,* whether deliberate indifference is a required element in a procedural due process claim.

## 10. DAMAGES.

### a. Plaintiff's Damages.

**Robert M. Brown v. KU Et Al.**

Summary of Damages

| | |
|---|---|
| Present Value of Foregone Comp | 2,146,197.68 |
| Expenditures for Unnecessary Student Loan | 27,518.27 |
| Reduction in Earnings During Matriculation | 36,851.00 |

Tuition & Fees retained by KU School of Law                 15,883.84

Travel Expenses to Attend KU School of Law                  1,456.47
Legal Fees                                                  4,111.20
Wayne Witcher Expert Fee                                      600.00
Mazza Deposition                                             686.25
Agrawal Deposition                                           515.50
Rohleder-Sook Deposition                                     653.70
Pearson & McKenzie Depositions                               900.50
Ware and Miller Deposition                                   631.00
Mazza Supplemental Deposition                                 66.50
Gray-Little and Phillips Deposition                          421.00
Expenses for Law School Study Aids                          1050.37

                                                        2,237,543.28

Past and future attorney's fees are sought pursuant to 42 U.S.C. § 1988.


**b.     Defendant's Damages.**

None claimed, other than attorneys' fees and costs pursuant to 42 U.S.C.

1988.

**11.    NON-MONETARY RELIEF REQUESTED, IF ANY.**

On his Federal claims, Plaintiff seeks Prospective Injunctive Relief pursuant to Ex Parte Young, as more fully described above.  On his state claims, Plaintiff seeks injunctive relief pursuant to K.S.A. 60-902 as more fully described above.

**12.    AMENDMENTS TO PLEADINGS.**

None

**13.    DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by January 8, 2013. Discovery is incomplete, in that the deposition of the Plaintiff's expert must be taken.  The parties have agreed to complete that deposition by July 12, 2013.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions, or other pretrial preparations. Under these circumstances, the parties may conduct discovery beyond the deadline for completion of discovery if all parties are in agreement to do so, but the court will not be available to resolve any disputes that arise during the course of this extended discovery.

**14.     WITNESSES AND EXHIBITS.**

     **a.     Final Witness and Exhibit Disclosures Under Rule 26(a)(3).** The parties' final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3)(A) shall be filed no later than 21 days before trial. With regard to each witness disclosed under Fed. R. Civ. P. 26(a)(3)(A)(i), the disclosures also shall set forth the subject matter of the expected testimony and a brief synopsis of the substance of the facts to which the witness is expected to testify. Witnesses expected to testify as experts shall be so designated. Witnesses and exhibits disclosed by one party may be called or offered by any other party. Witnesses and exhibits not so disclosed and exchanged as required by the court's order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of the court. The parties should bear in mind that seldom should anything be included in the final Rule 26(a)(3)(A) disclosures that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibit probably will be excluded at trial. See Fed. R. Civ. P. 37(c)(1).

     **b.     Objections.** The parties shall file any objections under Fed. R. Civ. P. 26(a)(3)(B) no later than 15 days before trial. The court shall deem waived any objection not timely asserted, unless excused by the court for good cause shown.

     **c.     Marking and Exchange of Exhibits.** All exhibits shall be marked no later than 5 business days before trial. The parties shall exchange copies of exhibits at or

before the time they are marked. The parties shall also prepare lists of their expected exhibits, in the form attached to this pretrial order, for use by the courtroom deputy clerk and the court reporter. In marking their exhibits, the parties shall use preassigned ranges of numbered exhibits. Exhibit Nos. 1-400 shall be reserved for plaintiff(s); Exhibit Nos. 401-800 shall be reserved for defendant(s); Exhibits 801 and higher shall be reserved for any third party. Each exhibit that the parties expect to offer shall be marked with an exhibit sticker, placed in a three-ring notebook, and tabbed with a numbered tab that corresponds to the exhibit number. The parties shall prepare exhibit books in accordance with the requirements of the judge who will preside over trial. The parties shall contact the judge's courtroom deputy clerk to determine that judge's specific requirements.

       **d.**    **Designations of Deposition Testimony.**

       (1)    **Written Depositions.** Consistent with Fed. R. Civ. P. 26(a)(3)(A)(ii), any deposition testimony sought to be offered by a party other than to impeach a testifying witness shall be designated by page and line in a pleading filed no later than 21 days before trial. Any counter-designation in accordance with Fed. R. Civ. P. 32(a)(6), and any objections to the designations made by the offering party, shall be filed no later than 15 days before trial. Any objections to counter-designations shall be filed no later than 8 business days before trial. Before filing any objections, the parties shall have conferred in good faith to resolve the dispute among themselves. No later than 3 business days before trial, to facilitate the court's ruling on any objections to

designations or counter-designations, the party seeking to offer the deposition testimony shall provide the trial judge a copy of each deposition transcript at issue. Each such transcript shall be marked with different colored highlighting. Red highlighting shall be used to identify the testimony that plaintiff(s) has designated, blue highlighting shall be used for defendant(s), yellow highlighting shall be used for any third party, and green highlighting shall be used to identify the objections to any designated testimony. After receiving and reviewing these highlighted transcripts, the court will issue its rulings regarding any objections. The parties shall then file the portions of the depositions to be used at trial in accordance with D. Kan. Rule 32.1.

(2)    **Videotaped Depositions.** The paragraph immediately above applies to videotaped depositions as well as written deposition transcripts. After the court issues its rulings on the objections to testimony to be presented by videotape or DVD, the court will set a deadline for the parties to submit the videotape or DVD edited to reflect the designations and the court's rulings on objections.

## 15.    MOTIONS.

**a.    Pending Motions.**  None.

**b.    Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

Mr. Brown intends to file a motion for summary judgment.

Counsel for Defendants will be filing a motion for summary judgment. If summary judgment is not granted, Counsel anticipates filing *in limine* motions and a possible Daubert motion concerning Plaintiff's expert.

The dispositive motion deadline, as established in the scheduling order and any amendments, is August 2, 2013.

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or other pretrial matters shall not exceed 30 pages, absent an order of the court.

**c.     Motions Regarding Expert Testimony.** All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, shall be filed by 60 days before trial but, if such a motion as a practical matter will be case-dispositive, or if an evidentiary hearing on the motion is reasonably anticipated, then this deadline shall be set in accordance with the dispositive motion deadline stated above.

**d.     Motions in Limine.** All motions in limine, other than those challenging the propriety of an expert witness, shall be filed no later than 15 days before trial. Briefs in opposition to such motions shall be filed within the time period required by D. Kan. Rule 6.1(d)(1), or at least 11 business days before trial, whichever is earlier. Reply briefs in support of motions in limine shall not be allowed without leave of court.

**16.**    **TRIAL.**

**a.**    This case is set for trial on the court's docket beginning on **February 4, 2014 at 9:00 a.m.** before Hon. Eric F. Melgren, U.S. District Judge.

**b.**    Trial will be by jury.

**c.**    Estimated trial time is five (5) days.

**d.**    Trial will be in Kansas City, Kansas, or such other place in the District of Kansas where the case may first be reached for trial.

**e.**    Not all of the parties are willing to consent to the trial of this case being presided over by a U.S. Magistrate Judge, even on a backup basis if the assigned U.S. District Judge determines that his or her schedule will be unable to accommodate any trial date stated above.

**f.**    Because of constraints on the judiciary's budget for the compensation of jurors, in any case in which the court is not notified of a settlement at least 1 full business day prior to the scheduled trial date, the costs of jury fees and expenses will be assessed to the parties, or any of them, as the court may order. See D. Kan. Rule 40.3.

**17.**    **SETTLEMENT.**

**a.**    **Status of Settlement Efforts.**

The parties have had numerous settlement discussions, including a mediation session with Magistrate Judge Gale, but have been unable to reach a resolution.  The

parties' positions on settlement remain too far apart to believe that further alternative dispute resolution efforts would succeed.

       **b.**     **Mediation and/or Other Method of Alternative Dispute Resolution.** Mediation is not ordered.

**18.**     **FURTHER PROCEEDINGS AND FILINGS.**

       **a.**     **Status and/or Limine Conference.** Relatively close to the date of trial, the trial judge may schedule a status and/or limine conference.

       **b.**     **Trial Briefs.** A party desiring to submit a trial brief shall comply with the requirements of D. Kan. Rule 7.6. The court does not require trial briefs but finds them helpful if the parties anticipate that unique or difficult issues will arise during trial.

       **c.**     **Voir Dire.** Due to substantially differing views among judges of this court concerning the extent to which counsel will be allowed to participate in voir dire, counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine what, if anything, actually needs to be submitted by way of proposed voir dire questions. Generally, proposed voir dire questions only need to be submitted to address particularly unusual areas of questioning, or questions that are likely to result in objections by the opposing party.

       **d.**     **Jury Instructions.**

          (1)     Requests for proposed instructions in jury cases shall be submitted in compliance with Fed. R. Civ. P. 51 and D. Kan. Rule 51.1. Under D. Kan. Rule 51.1, the

parties and the attorneys have the joint responsibility to attempt to submit one agreed set of preliminary and final instructions that specifically focuses on the parties' factual contentions, the controverted essential elements of any claims or defenses, damages, and any other instructions unique to this case. In the event of disagreement, each party shall submit its own proposed instructions with a brief explanation, including legal authority as to why its proposed instruction is appropriate, or why its opponent's proposed instruction is inappropriate, or both. Counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine that judge's so-called standard or stock instructions, e.g., concerning the jury's deliberations, the evaluation of witnesses' credibility, etc.; it is not necessary to submit such proposed jury instructions to the court.

(2)     Proposed instructions in jury cases shall be filed no later than 8 business days before trial. Objections to any proposed instructions shall be filed no later than 5 business day before trial.

(3)     In addition to filing the proposed jury instructions, the parties shall submit their proposed instructions (formatted in WordPerfect X5, Word 2010 or earlier version) as an attachment to an Internet e-mail sent to the e-mail address of the assigned trial judge listed in paragraph II(E)(2)(c) of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases.*

**e.    Proposed Findings of Fact and Conclusions of Law.** If this case is tried to the court sitting without a jury, in order to better focus the presentation of evidence, the parties shall file preliminary sets of proposed findings of fact and conclusions of law no later than 5 business days before trial. In most cases, the trial judge will order the parties to file final sets of proposed findings after the trial transcript has been prepared.

**19.    OTHER.**

**a.    Conventionally Filed Documents.** The following documents shall be served by mail and by fax or hand-delivery on the same date they are filed with the court if they are filed conventionally (i.e., not filed electronically): final witness and exhibit disclosures and objections; deposition designations, counter-designations, and objections; motions in limine and briefs in support of or in opposition to such motions; trial briefs; proposed voir dire questions and objections; proposed jury instructions and objections; and proposed findings of fact and conclusions of law. In addition, a party filing a trial brief conventionally shall deliver an extra copy to the trial judge's chambers at the time of filing.

**b.    Miscellaneous.**

None.

**20.    POSSIBLE ADJUSTMENT OF DEADLINES BY TRIAL JUDGE.**

With regard to pleadings filed shortly before or during trial (e.g., motions in limine, trial briefs, proposed jury instructions, etc.), this pretrial order reflects the

deadlines that the court applies as a norm in most cases. However, the parties should keep in mind that, as a practical matter, complete standardization of the court's pretrial orders is neither feasible nor desirable. Depending on the judge who will preside over trial, and what adjustments may be appropriate given the complexity of a particular case, different deadlines and settings may be ordered. Therefore, from the pretrial conference up to the date of trial, the parties must comply with any orders that might be entered by the trial judge, as well as that judge's trial guidelines and/or exhibit instructions as posted on the court's Internet website:

(http://www.ksd.uscourts.gov/flex/?fc=11)

IT IS SO ORDERED.

Dated this 18th day of June, 2013, at Wichita, Kansas.


s/ KENNETH G. GALE
Kenneth G. Gale
U. S. District Magistrate Judge

| SUMMARY OF DEADLINES AND SETTINGS | |
|---|---|
| Event | Deadline/Setting |
| Extended deadline to complete any remaining discovery (if applicable) | |
| Mediation/settlement conference (if applicable) | |
| Dispositive motions (e.g., summary judgment) | |
| Motions challenging admissibility of expert testimony | 60 days before trial |
| Trial | 2/4/2014 at 9:00 a.m. |
| Status and/or limine conference (if presently set) | |
| Final witness & exhibit disclosures | 21 days before trial |
| Objections to final witness & exhibit disclosures | 15 days before trial |
| Exhibits marked | 5 business days before trial |
| Deposition testimony designated | 21 days before trial |
| Objections to deposition designations, along with any counter-designations | 15 days before trial |
| Objections to counter-designations of deposition testimony | 8 business days before trial |
| Submission of disputed deposition designations to trial judge | 3 business days before trial |
| Motions in limine | 15 days before trial |
| Briefs in opposition to motions in limine | 11  days before trial |
| Proposed jury instructions | 8 business days before trial |
| Objections to proposed jury instructions | 5 business day before trial |
| Preliminary sets of proposed findings of fact and conclusions of law in bench trials | 5 business days before trial |

Exhibit Sheet

Case No: _____          _____ Exhibits

| No. | Description | I.D. | Off. | Adm. | Deposition or Witness |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Respectfully submitted,

By:  /s  Sara L. Trower

Sara L. Trower, Ks. # 21514
Associate General Counsel and Special
Assistant Attorney General
Room 245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045
Tel:  (785) 864-3276
Fax:  (785) 864-4617
E-mail:  strower@ku.edu
*Attorney for Defendants*


By: /s Robert M. Brown
Robert M. Brown, Pro Se
6200 W. 74th Street
Overland Park, KS 66204
Phone: 816-721-4512
Fax: 866-610-4630
Email: robertmbrown@live.com