Brown v. the University of Kansas, et al.

No. 10-CV-2606 EFM

**Exhibit E-1**

**Additional Excerpts from Deposition of Robert Brown**

retrospect that was a terrible decision, it was stupid, it was bad judgment.

Q Okay.

A That is the reason.

Q Okay. Now, when you said you did research on the period of time that was considered remote by the bar, you understood at the time that you were applying to the School of Law, that the application that you were filling out for the School of Law was the School of Law's application; correct?

A I knew it was the School of Law's application, yes.

Q Okay. And so whatever research that you did related to what the bar, which would be the Kansas Supreme Court for admission to the bar as a practicing attorney in Kansas, may have viewed it but you weren't applying for the bar, were you?

A No, I was not.

Q And you knew that the application that you were filling out was not for the Kansas bar; correct?

A That's correct, and I throw myself upon your mercy. What I did was, was wrong, it was stupid. That's the reason that I did it. It wasn't a good reason. I am ashamed of those things. I wanted

to minimize them. In retrospect I would do it differently. You don't, you don't have to interrogate me in order to get me to say that I made a terrible mistake by doing that.

Q You said that you wanted to minimize those things and that you are ashamed of those things.

A Yes.

Q Given your feelings towards those things, at the time that you submitted your application you similarly suspected that that information would be looked upon unfavorably by the individuals reviewing your application for admission to the School of Law; correct?

A I, I didn't -- can you repeat the question.

Q Can you read the question back.

(The pending question was read back by the reporter as requested.)

A Oh, prior criminal history? Yeah, I, I figured that that might be looked upon unfavorably by the people reviewing my application for admission to the School of Law.

Q Okay. So at the time that you submitted your application you suspected that if you disclosed your criminal record and the DUI offenses that are part of that criminal record in the course of

petition for certiorari, was also submitted along with your August --

A Yes, that is my testimony.

Q Okay. For housekeeping purposes, Bob, so I don't forget before we get to the end of the thing, rather than putting this actual copy in the record what I would like to do at the end of the deposition is make a copy of this.

A I've already sent you the text, they have been Bates labeled.

Q No, I know that, but I have marked this as an exhibit --

A Oh, all right.

Q -- so what I would like to do is Xerox this copy, substitute the Xerox copy for this actual --

A That's fine, yes.

Q Okay. You have no objection to my doing that?

A No, I have no objection to you doing that.

Q Okay. Mr. Brown, in your August 27, 2009, letter in which you supplemented your answers to question No. 27 --

A Uh-huh.

Q -- you did not disclose that you had had a second DUI charge in Topeka; correct?

A The 1979 one?

Q Well, you told me you had two, one in 1979 and the other in 1982 or 1984.

A Yeah. The, the diversion would be the second one and apparently it happened later than I thought but in Topeka there were things in 1979 and 1982 on the K.B.I. report. I was guessing about the dates, obviously that's the reason for the question marks after them. I was unable to find these things online.

Q And, however, as to the number of charges, you did not indicate that you had had a second DUI charge in Shawnee County; correct?

A I disclosed every, every DUI charge in Shawnee County that I could think of.

Q But the reality is that you only disclosed one and you have a second one in Shawnee County; correct? You would agree with me that there's no reference here to the second one that occurred in Shawnee County, second DUI?

A Well, there is a reference to the diversion. There is no reference to the one that was reduced to a reckless driving. The one I remembered was the diversion.

Q And similarly in respect to the August 27, 2009, letter in which you were supplementing and

updating your question No. 27 you did not disclose the 1999 DUI arrest in North Kansas City; correct?
A No. I was, I was disclosing convictions.
Q The question 27, however, did not ask simply for convictions, it asked for arrests; correct?
A Well, I recall that now.
Q Well, you knew that at the time that you had submitted your application to the law school and at the time that you were supplementing your application to the law school, which is the August 27, 2009, letter?
A Well, let me put it this way. I handed you a letter that said, okay, I've got, and a petition for certiorari that says I've got four charges, three convictions for domestic battery, a diversion on DUI, a guilty finding on DUI. I figured if there was going to be an issue, then that would certainly be enough to make the case, you know, make or break, you'd let me know what action you planned to take on it within a reasonable period of time.
Q That's not the question I asked, Mr. Brown. At the time that you submitted your August 27, 2009, letter supplementing question 27 you still understood that question 27 did not simply ask for

convictions but it also asked for arrests?

A No, I was under the misapprehension that I was only to provide convictions, which is why I only provided convictions. I, I know now that that is what the question says.

Q And you knew that at the time that you submitted your application and at the time that you submitted your August 27, 2009, supplementation, that the question asked for arrests, not simply convictions.

A I, I know that the question asks for arrests, yes.

Q After you submitted your August 27, 2009, supplemental disclosure regarding question No. 27 you were asked to provide a written explanation elaborating upon the facts and circumstances of those criminal charges; correct?

A Yes.

Q I hand you what's been marked as Exhibit 5. Is that a letter from you dated September 11, 2009?

A Yes.

Q And is the letter dated September 11, 2009, is that your written response to the request for additional information concerning the answers or the matters that you disclosed on the August 27, 2009, supplemental disclosure concerning question

27?
A Yes.
Q In the September 11, 2009, letter you did not disclose the second arrest for DUI that had occurred in Shawnee County; correct?
A I was not aware of it.
Q But you did not disclose it; correct?
A I did not disclose it. I was not aware of it. I still don't have any independent recollection of it to this moment.
Q In the September 11, 2009, letter you did not disclose the 1999 DUI arrest in North Kansas City, Kansas, or Missouri; correct?
A Correct. Oh, and there, there's also a 2004 arrest for criminal trespass.
Q Okay. So we need to add the 2004 criminal arrest for trespass to your list of criminal arrests and convictions?
A Yes, right, right. No, arrests.
Q Arrests and convictions?
A Right. It's an arrest.
Q Right. I'm sorry, if you misunderstood what I was saying, it's, we're adding it to the list of criminal offenses.
A Right. I just want to be clear that it is an

arrest for which there was no conviction or even a trial.

Q And where was the criminal arrest for trespass?

A Overland Park.

Q Were charges ever filed?

A Yes.

Q Charges were filed in Johnson County District Court, then?

A Yes.

Q And disposition was a dismissal?

A Yeah, the State moved to dismiss after examining the credibility of their complaining witness, Robyn Barr.

Q In the September 11, 2009, letter you did not disclose the 2004 criminal arrest -- arrest for criminal trespass; correct?

A No, I did not.

Q Mr. Brown, I'm going to hand you what's been marked as Deposition Exhibit 6 and for purposes of identifying it for the record would you agree with me that that is an e-mail string that began with an October 2nd, 2009, e-mail from Wendy Rohleder-Sook, R O H L E D E R hyphen S O O K, to you and then on the top of that is an October 2nd, 2009, e-mail response from you to