# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROBERT M. BROWN,

*Plaintiff,*

vs.

Case No. 10-2606-EFM

UNIVERSITY OF KANSAS, et al.,

*Defendants.*

## MEMORANDUM AND ORDER

Pro se Plaintiff Robert M. Brown brings suit against sixteen Defendants, including the University of Kansas. He alleges under 42 U.S.C. § 1983 a deprivation of due process of law regarding a property and liberty interest. He also asserts state claims of wanton and gross negligence, tortious interference with prospective business advantage, and civil conspiracy. Defendants now bring a motion for summary judgment. Because the Court concludes that no genuine issue of material fact remains as to any of Plaintiff's claims, the Court grants Defendants' Motion for Summary Judgment.

## I.     Factual and Procedural Background[1]

### *Local Rules for Summary Judgment*

---

[1]     In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

The required rules for summary judgment motions in the District of Kansas are set forth in D. Kan. Rule 56.1. Under that rule, a party is required to set forth a concise statement of *material facts* in separately numbered paragraphs and must refer to record with particularity.[2] In addition, the content or substance of the evidence must be admissible, and hearsay testimony that would be inadmissible at trial may not be included.[3] In this case, Plaintiff's facts are frequently not supported by competent evidence. Numerous times, he cites to his Complaint as support for his position even though his Complaint sets forth hearsay statements. Furthermore, the statement of facts is not the place for argument. Plaintiff frequently attempts to controvert Defendants' factual statements by argument. Sometimes, he controverts a one-sentence factual statement with over four pages of argument and purported additional, immaterial and inadmissible facts.

Although Plaintiff is pro se, and the Court must afford him some leniency in his filings,[4] he is still expected to "follow the same rules of procedure that govern other litigants."[5] The Court reviewed Plaintiff's purported facts and whether those facts were supported by the record. The Court sets forth below the uncontroverted, material facts that were supported by admissible evidence.

*Facts*

---

[2] D. Kan. Rule 56.1(a) and (b)(2).

[3] *See Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998). "While the party opposing summary judgment need not produce evidence in a form that would be admissible at trial, . . . the content or substance of the evidence must be admissible. Hearsay testimony cannot be considered because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill." *Id.* (internal quotation marks and citations omitted).

[4] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[5] *Id.*

The University of Kansas, a state educational institution and separate state agency, is funded in part by the State of Kansas. The Kansas Board of Regents controls and supervises the University of Kansas. The University of Kansas, School of Law ("the School of Law" or "Law School"), is an academic unit within the University of Kansas.

Gail Agrawal was the Dean of the School of Law from August 2006 until June 2010. During that period, Dean Agrawal was an employee of the University of Kansas. In 2009-2010, Stephen Mazza was Associate Dean at the School of Law. In June 2010, he was named interim Dean of the School of Law, and in April 2011, he was named Dean. Mazza was an employee of the University of Kansas at all times in his various capacities with the School of Law.

Andy Tompkins is the President and CEO of the Kansas Board of Regents. Bernadette Gray-Little, Chancellor of the University of Kansas, assumed her duties as Chancellor in August 2009, and she is an employee of the University of Kansas. Joyce McCray Pearson was a faculty member, and thus an employee, of the School of Law in 2009-2010. Pearson was also the Chair of the University Judicial Board during 2009-2010. Wendy Rohleder-Sook was employed by the School of Law as Associate Dean for Student Affairs in 2009-2010.

Plaintiff Robert Brown filed an application for admission to the School of Law on April 8, 2009. The application contained the following questions under "Character & Fitness":

[27]c. Have you ever been arrested for, charged with, or convicted of a felony, misdemeanor or infraction other than a traffic violation? (include diversions, sealed or expunged records, and juvenile offenses)

d. Have you ever been arrested for, charged with, or convicted of a traffic violating [sic] involving alcohol or a controlled substance? (include diversions, sealed or expunged records, and juvenile offenses)

If you answered "yes" to any of these questions, please explain on a separate sheet or electronic attachment submitted with your application and provide the

date, nature of the offense or proceeding, name and location of the court or tribunal, and disposition of the matter.[6]

Brown answered "no" to these questions.

The application also included the following certification, which Brown acknowledged by

his electronic submission of the application:

> I certify, that, to the best of my knowledge, the information stated in this application and in any supporting documents submitted is true and complete. I understand that falsification, misrepresentation or failure to supply required information in connections [sic] with this application is sufficient cause for denial of my application or dismissal from the School of Law. I understand that I have the duty to notify the Office of Admissions if there are any changes in my answers after this application is submitted.

Brown also submitted the "Certification Letter," which he signed, with his application, and this

letter included the following statements:

> I certify that the information I have provided is true and complete; that I will notify the Office of Admissions immediately if there is any change in the information that I have provided in this application; that I am the author of the statements or additional information included with this application; and that I understand the statements made herein are the basis upon which my application will be decided. In the event that any information is subsequently found to be false, I understand that my admission may be voided and my matriculation canceled. I understand that I have a duty to notify the Office of Admissions in writing if there are any changes in my answers after this application is submitted.

> I understand that admission is conditional upon meeting the requirements stated in the University of Kansas School of Law catalog, and any further conditions expressed at the time of admission. The School of Law does not authorize nor is it bound by any requirements or conditions other than those communicated by the Office of Admissions.[7]

On April 15, 2009, Brown was offered a spot on the School of Law's waitlist. On April

21, 2009, Brown accepted the placement on waitlist by submitting the Law School's standard

---

[6] Pretrial Order, Doc. 144, p. 5, ¶ 16.

[7] Pretrial Order, Doc. 144, p. 6, ¶ 18.

form.  By letter dated May 17, 2009, Brown provided additional materials to supplement his application for admission to the School of Law, including a statement about his specific interest in the School of Law and additional optional essay.

On August 19, 2009, Brown was offered admission to the School of Law's fall 2009 entering class.  Brown submitted a seat deposit fee waiver form to the School of Law on August 20, 2009, and was admitted.  The first day of classes for the Fall 2009 academic term at the University of Kansas was August 20, 2009.

On August 27, 2009, after the start of classes at the School of Law, Brown submitted a letter stating that he would like to amend his law school application.  He stated that he did not consider his entire lifespan when he previously answered the questions.  Amending his answer to question 27, he disclosed the following criminal convictions:

| Case No | Tribunal | Charge | Finding |
|---------|----------|--------|---------|
| 96DV290 | Jo Co Dist Ct | Domestic Battery | Guilty |
| 96DV740 | Jo Co Dist Ct | Domestic Battery | Guilty |
| 90???? | Jo Co Dist Ct | DUI | Guilty |
| 79???? | Shawnee Co | DUI | Guilty[8] |

On August 27, 2009, in response to Brown's letter, Associate Dean Wendy Rohleder-Sook asked Brown to provide a further explanation regarding the criminal matters that he had disclosed on that date.  Dean Agrawal was involved in this decision to request more information regarding Brown's prior convictions.

On September 3, 2009, Associate Dean Rohleder-Sook made another request to Brown asking him to provide further explanation regarding the criminal charges that he had disclosed.

---

[8] Pretrial Order, Doc. 144, p. 7, ¶ 25.

On September 11, 2009, Brown provided a letter in which he provided additional information concerning those facts.  In this letter, Brown asserted that his alcohol related offenses were a long time ago at a time in which he exercised poor judgment.  Brown also stated that although he was found guilty on the domestic battery cases, the allegations of domestic violence were untrue.

On October 2, 2009, Associate Dean Rohleder-Sook emailed Brown to advise him that additional charges ("12/05/94, Battery, dismissed by prosecutor; 12/21/94, Battery, dismissed by prosecutor; and 4/23/04, Criminal Trespass, dismissed by prosecutor")[9] regarding him had been discovered, and asked him to provide written authorization to the Johnson County District Attorney's office to release full information and documents to the School of Law regarding those charges.  She also asked for an explanation for why he did not disclose those criminal matters on his application for admission or in his subsequent amendment.  On October 2, 2009, Brown responded via email to Associate Dean Rohleder-Sook and advised her that the two counts of battery that she had questions about had been included in the documentation he had originally provided with his amendment.  He also provided additional information concerning the other charges that she noted in her email.

On October 7, 2009, the School of Law requested copies of records from the Johnson County District Court Clerk's Office.  Sometime thereafter, the Clerk's Office provided a copy of the trial record for the prosecutions in the DV290 and DV740 domestic battery charges against Brown.

On November 30, 2009, Dean Agrawal, Associate Dean Rohleder-Sook, and Associate Dean Mazza conferred about presenting the matter to the admissions committee.  Also, on that

---

[9] Pretrial Order, Doc. 144, p. 8, ¶ 28.

date, Dean Agrawal and Associate Dean Rohleder-Sook decided to defer reconvening the admissions committee until after the break.

Brown was allowed to continue in classes pending the School of Law's review of his application falsification. He sat for finals in December 2009 and received grades for the fall semester of 2009. Brown then began the spring semester in January, 2010.[10]

On January 19, 2010, the 2008-2009 Law School Admissions Committee convened to consider the status of Brown's application and determined that they would have rejected his application had they known of the criminal charges he failed to disclose. Following the Admissions Committee's decision, Associate Dean Rohleder-Sook consulted with Associate Dean Mazza, who advised that Brown would be afforded due process through the Law School Dispute Resolution Procedure. To initiate that process, Associate Dean Rohleder-Sook had to file a complaint regarding Brown's failure to disclose his criminal history on his application.

On February 17, 2010, Associate Dean Rohleder-Sook collaborated with Associate Dean Mazza, and then filed with Associate Dean Mazza, a letter with the reference "Allegation of Academic Misconduct: Robert M. Brown." This letter outlined Brown's answers to questions 27c and 27d on his law school application for admissions as the basis for the complaint against him. During the pendency of the School of Law's allegation of academic misconduct, Defendant Mazza communicated with Brown via emails that had the subject line "Disciplinary Procedures."

On February 23, 2010, Brown met with Associate Dean Mazza. Brown responded to Rohleder-Sook's February 17, 2010, academic misconduct charges, in a written response dated

---

[10] Brown completed this semester, as well. He also enrolled in the summer and fall 2010 sessions before he was dismissed.

February 28, 2010. In this letter, he asserted numerous reasons as to why he believed the complaint was procedurally improper.

On April 14, 2010, Associate Dean Mazza emailed Brown and informed him that after hearing back from the University of Kansas's General Counsel's office, Associate Dean Rohleder-Sook would be filing a response denying his procedural objections. Associate Dean Mazza also stated that the next step would be to schedule a three-judge panel to conduct a hearing, but according to disciplinary rules, a hearing could not be conducted during finals week. He questioned Brown as to whether Brown would prefer the hearing prior to or subsequent to finals. Brown emailed Mazza on April 15, 2010, inquiring whether the hearing would be held regarding his procedural objections and requested a response to his request for mediation. On that same day, Mazza responded, via email, and stated that the procedural objections and underlying substantive issue would be part of the same hearing, and that they did not intend to mediate.

On April 16, 2010, Associate Dean Mazza and Brown again corresponded by email. Brown stated that he was waiting for the response to his procedural objections and that he had not been informed of the specific University Code, University Senate Rules and Regulations ("U.S.S.R."), or Honor Code provision that he had violated. Associate Dean Mazza replied to Brown stating that he would forward Associate Dean Rohleder-Sook's response once he had it and that it was his understanding that the provision upon which the charges were based would be included in that response. Associate Dean Mazza also proposed to schedule the hearing during the week of May 10, 2010—after the conclusion of the examination period. Brown responded that he would not agree to a hearing on the merits until his procedural objections had been resolved. Associate Dean Mazza again opposed Brown's request.

On April 19, 2010, Associate Dean Rohleder-Sook placed a response to Brown's procedural objections in his School of Law mailbox. This response was dated April 16, 2010, and it was signed by Rohleder-Sook. Associate Dean Mazza helped draft this written response. On April 19, 2010, Associate Dean Mazza also provided Brown with the name of the hearing panel chair and explained that all subsequent communications regarding this matter should be between Brown and the hearing panel chair.

A hearing panel was convened to consider the academic misconduct charge against Brown. Between April 19, 2010, and the time the hearing panel issued its decision on May 3, 2010, it met three or four different times. Brown never appeared before the hearing panel and heard no more regarding the complaint until late May.

On May 3, 2010, the hearing panel issued its decision and dismissed the academic misconduct claim against Brown. In this Memorandum decision, the panel stated, in part: "The complaint fails to allege a violation of Section 2.6.1 or, to use the words of U.S.S.R. Section 6.5.3.1(d), any other University rule. Therefore, we hereby dismiss Dean Wendy Rohleder-Sook's complaint of February 17, 2010."[11] The Memorandum also stated:

> While we are not aware of any University rule prohibiting misrepresentation on an application for admission, we do not believe that is the end of the matter. Mr. Brown's application states "I understand that falsification, misrepresentation or failure to supply the required information in connection with this application is sufficient cause for denial of my application or dismissal from the School of Law." Similarly, Mr. Brown's LSAC letter certifying his electronic application to the Law School states: I certify that, to the best of my knowledge, the information stated on this application and in any supporting documents submitted is true and complete. I understand the falsification, misrepresentation or failure to supply required information in connection with this application is sufficient cause for denial of my application or dismissal from the School of Law. I understand that I

---

[11] Pretrial Order, Doc. 144, p. 9, ¶37.

have a duty to notify the Office of Admissions if there are any changes in my answers after this application is submitted.

In each of these documents, signed by Mr. Brown, he acknowledged the Law School's right to dismiss him if his application for admission contains a misrepresentation. Mr. Brown's August 27, 2009, letter to Dean Wendy Rohleder-Sook clearly concedes that he did in fact make misrepresentations on his application. Therefore, we recognize that the Law School has the right to dismiss Mr. Brown even though this Hearing Panel does not have the authority to hear this case.[12]

Dean Rohleder-Sook's formal involvement with Mr. Brown's application and failure to disclose his criminal history in that application concluded with the May 3, 2010, Memorandum decision. Following the receipt of the hearing panel's Memorandum, Associate Dean Mazza and Dean Agrawal determined that the issue of Brown's misrepresentations in his application for admission was Dean Agrawal's responsibility to decide. Dean Agrawal sought the legal advice of the University's Office of General Counsel.

On May 26, 2010,[13] Brown received a letter from Dean Agrawal. In this letter, Dean Agrawal advised Brown that she planned to dismiss him from the School of Law effective June 8, 2010, "for falsification, misrepresentation, and failure to supply complete, accurate and truthful answers to [his] application for admission to the School of Law."[14] Dean Agrawal's letter further advised Brown that "if you believe that this action is inappropriate or that there are mitigating factors that I should consider before dismissing you, then you must provide me with a written response to this letter by 2:00 p.m. on June 3, 2010." Brown provided Dean Agrawal, by

---

[12] Hearing Panel's Memorandum, Doc. 155-12.

[13] In the Pretrial Order, the parties stipulate to the fact that the letter was dated May 25, 2010. In briefing, the parties use the dates of both May 25 and 26, 2010. In reviewing the exhibit, the letter is dated May 26, 2010. Thus, the Court will use that date.

[14] Pretrial Order, Doc. 144, p. 10, ¶39. *See also* Dean Agrawal's May 26, 2010 Letter to Brown, Doc. 168-11.

letter dated May 27, 2010, his written response, in which he stated that he believed his dismissal was inappropriate because it violated the Code of Student Rights and Responsibilities as set forth by the University Senate. He also stated that he requested a hearing and a written notice of the nature and cause of the charges against him. Brown also requested a personal meeting with her to discuss the matter. On May 28, 2010, Dean Agrawal responded by email to Brown's request for a personal meeting and stated that she saw no need to meet with him and declined his request for a meeting.

On May 31, 2010, Brown addressed a letter to the "Chair of the University Judicial Board," and he submitted a "Request for Initial Hearing before the Judicial Board Pursuant to 6.4.3.1(b) of the University Senate Rules and Regulations and Election to Invoke the Jurisdiction of the University Judicial Board Pursuant to University of Kansas Law School Dispute Resolution Procedure Section (A)(4)(c)."[15] Brown also submitted a "Request for Jurisdictional Ruling pursuant to 6.5.2.1. of the University Senate Rules and Regulations."[16]

In a letter dated June 3, 2010, Joyce McCray Pearson, Chair of the University Judicial Board, informed Brown:

> I have reviewed your requests for a jurisdictional ruling and an initial hearing, both dated May 31, 2010. I have also reviewed University Regulations to determine whether they authorize the Judicial Board to exercise jurisdiction in your case. I regret to inform you that I have found no basis for jurisdiction by the Judicial Board.
>
> The Faculty Senate Rules and Regulations (FSRR) 2.1.1 gives the authority for policies on admission to the faculties of the various schools and the College (see excerpt below).
>
> . . .

---

[15] Pretrial Order, Doc. 144, pp. 10-11, ¶ 42.

[16] Pretrial Order, Doc. 144, p. 11, ¶ 43.

> Admission standards lie within the jurisdiction of the schools and College because the academic evaluation lies within the individual department and the professors who have expertise in that field.
>
> Pursuant to University Senate Rule and Regulation 6.5.3.1(c), I hereby dismiss your petition. I have concluded that the Judicial Board lacks jurisdiction over the subject matter.
>
> This Judicial Board decision is the final determination of this matter by the university. If you wish to proceed outside the university, Chancellor Bernadette Gray-Little is the agency officer who should receive any service of subsequent petition for judicial review of this action.[17]

Pearson had no knowledge of Brown prior to his May 31, 2010, filings with the University Judicial Board.

On June 7, 2010, Dean Agrawal wrote Brown to advise him that he was dismissed from the School of Law, effective June 8, 2010. Dean Agrawal consulted with the Office of General Counsel in composing her June 7, 2010, dismissal letter. This letter stated, in part, that the School of Law's transcript would show that Brown's dismissal from the Law School was based on "falsification, misrepresentation, and failure to supply required information on [his] application to the School of Law."[18]

At Brown's deposition, he acknowledged his criminal history: 1979 arrest for DUI in Topeka, which was pled down to reckless driving; 1982 or 1984 arrest for DUI in Topeka for which he received a diversion; 1986 arrest for DUI in Overland Park for which he was convicted and sentenced to two days in jail, community service, and a 90-day suspension of his driver's license; during the period of 1994-96, he was arrested on three separate occasions and charged

---

[17] Pretrial Order, Doc. 144, pp. 11-12, ¶ 44. *See also* McCray Pearson Letter to Brown, Doc. 155-3, p. 5.

[18] Pretrial Order, Doc. 144, p. 13, ¶50.

with four charges of domestic battery, resulting in convictions on three of those charges; and a 1999 DUI in Kansas City, Missouri, but the charge was dismissed.[19]

Brown acknowledged, during his deposition, that at the time he answered "no" to questions 27c and 27d on his application for admission that he had incidents in his history that were responsive to those questions. Specifically, with regard to question 27c, he stated that he knew that he had been charged with, and arrested for, domestic battery. With regard to question 27d, he stated that he knew that he had been arrested for DUI's and failed to disclose those arrests on his application. Brown also testified that he thought that his criminal history "might be looked upon unfavorably by the people reviewing [his] application for admission."[20] Since Brown's dismissal from the School of Law, he has not sought admission to any other law school.

On November 9, 2010, Plaintiff, proceeding pro se, filed suit against seventeen Defendants.[21] Plaintiff named the University of Kansas, as well as three individuals (Stephen Mazza, Gail Agrawal, and Wendy Rohleder-Sook) who worked for the School of Law. He also named Judicial Board Chair Joyce McCray Pearson and Chancellor of the University of Kansas Bernadette Gray-Little. The other ten named Defendants are individuals who are members of the Kansas Board of Regents, and he named these individuals in their official capacity.

Plaintiff brings four claims against Defendants Mazza, Agrawal, Rohleder-Sook, and McCray Pearson: (1) a denial of a property and liberty interest without due process pursuant to 42 U.S.C. § 1983, (2) wanton and gross negligence, (3) tortious interference with prospective

---

[19] Plaintiff attempts to controvert his previous deposition testimony by stating that he has no independent recollection of two of his DUI arrests but only realized them when he saw his KBI report.

[20] Doc. 155-5, p. 10.

[21] Defendant the University of Kansas School of Law was previously dismissed. Doc. 69.

business advantage, and (4) civil conspiracy.  He seeks injunctive relief and damages in excess of $2 million dollars.  Defendants now seek summary judgment on all claims asserted against them.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[22] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[23]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[24]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[25]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[26]

## III.     Analysis

Plaintiff brings four claims against Defendants: (1) denial of a property and liberty interest without due process pursuant to 42 U.S.C. § 1983, (2) gross and wanton negligence, (3) tortious interference, and (4) civil conspiracy.  The Court will address each claim in turn.

### A.  *42 U.S.C. § 1983 Procedural Due Process Claim*

---

[22]  Fed. R. Civ. P. 56(a).

[23]  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[24]  *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[25]  *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[26]  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

Initially, the Court must address the Defendants at issue with regard to this claim. "The elements necessary to establish a § 1983 . . . violation will vary with the constitutional provision at issue. But common to all §1983 . . . claims is the requirement that liability be predicated on a violation traceable to a defendant-official's own individual actions."[27] "[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."[28]

In this case, at Plaintiff's deposition, he testified that the Board of Regents' members had no knowledge of him or his claims until he served them with this lawsuit. In addition, he admitted that the Kansas Board of Regents took no overt action against him.[29] Thus, Plaintiff's claims against the members of the Board of Regents must be dismissed.[30]

Plaintiff brings a §1983 procedural due process claim on the basis that he had a property interest in his continued enrollment in the School of Law and that he had a liberty interest in the right to pursue a lawful calling of his own choosing that Defendants violated when they dismissed him from the School of Law.[31] Plaintiff brings this claim against Defendants Agrawal, Mazza, Rohleder-Sook, and McCray Pearson.[32] Defendants first contend that Plaintiff cannot

---

[27] *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quotation marks and citations omitted).

[28] *Id.* (quotation marks and citation omitted).

[29] Plaintiff states that he simply included the members of the Board of Regents as official capacity defendants to make sure that any judgment would be operative.

[30] The Court notes that in the Complaint, it appears that Plaintiff only asserts his §1983 claim (and other state law claims) against Defendants Agrawal, Mazza, Rohleder-Sook, and McCray Pearson.

[31] To the extent that Plaintiff also alleged a substantive due process claim, he dropped this contention in the Pretrial Order. *See* Pretrial Order, Doc. 144, pp. 29-30.

[32] The evidence demonstrates that Dean Agrawal is the individual who dismissed Plaintiff. Thus, it would appear that because the alleged § 1983 violation is not traceable to Defendants Mazza, Rohleder-Sook, and McCray Pearson's own individual actions, Plaintiff fails to state a claim against these Defendants. The Court, however, will continue to address this claim as if it relates to all four of the named Defendants.

establish that he has a protected property or liberty interest.  Defendants next contend that even if Plaintiff had a property or liberty interest, the evidence demonstrates that Plaintiff's dismissal comported with due process requirements.  Finally, Defendants contend that they are entitled to qualified immunity.

"An essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' "[33]  Courts follow a two-step process to evaluate procedural due process claims.  First, the court must determine if the individual "possess[ed] a protected interest such that the due process protections were applicable."[34]  Next, the court must determine if the individual was "afforded an appropriate level of process."[35]

*Property or Liberty Interest*

"[P]roperty interests are 'not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .' "[36]  To have a property interest, an individual "must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."[37]  "The Tenth Circuit has held, based on various state laws, that students at public institutions may have a protected property interest in their *continued* enrollment.  Thus students, once admitted to

---

[33] *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

[34] *Id.* (quotation marks and citation omitted).  *See also Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999) (stating that only after finding that the plaintiff has been deprived of a property or liberty interest does the court then determine whether the procedures satisfied due process).

[35] *Riggins*, 572 F.3d at 1108 (quotation marks and citation omitted).

[36] *Fed. Lands Legal Consortium*, 195 F.3d at 1196 (quoting *Loudermill*, 470 U.S. at 538).

[37] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

a post-secondary school, may have substantive or procedural property rights that would extend certain protections to them regarding their dismissal."[38]

In this case, Plaintiff contends that he possessed a property interest in his continued education at the School of Law. Plaintiff paid his tuition and ultimately went through two semesters of law school.[39] Accordingly, the Court concludes that he had a property interest in his continued enrollment which entitled him to procedural due process.

Although Plaintiff also asserts that he possessed a liberty interest in the right to pursue a lawful calling of his own choosing,[40] the Court finds otherwise. To implicate a liberty interest, there must be publication of false and stigmatizing information.[41] In this case, there is no evidence that Dean Agrawal's statements in her May 26, 2010, and June 7, 2010, letters were disseminated to anyone outside of the University of Kansas.[42] Nor is there any evidence that the information was false. Thus, Plaintiff cannot demonstrate a liberty interest. Accordingly, the

---

[38] *Lemon v. Labette Comm. Coll.*, --- F. Supp. 2d. ---, 2014 WL 943105, at *5 (D. Kan. Mar. 11, 2014) (collecting cases). *See also Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001) (nothing that a student had a property interest in his place in nursing school); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (determining that a part-time graduate psychology student had a protected property interest); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) (concluding that the individual's enrollment fee in a vocational nursing program granted her a property interest in her continued education); *Lee v. Kan. State Univ.*, 2013 WL 2476702, at *6 (D. Kan. June 7, 2013) (noting that "the Tenth Circuit recognizes a constitutional right to due process before a student can be deprived of her property interest in her continued enrollment and graduate education.").

[39] The issue of Plaintiff's application falsification arose soon after Plaintiff had begun his first semester of law school.

[40] Plaintiff disavows that he is bringing a liberty claim based on his reputational interest. He affirmatively states that "he has never claimed that he has a reputational interest that was damaged." *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. 165, p. 134.

[41] *See Asbill v. Hous. Auth. of Choctaw Nations*, 726 F.2d 1499, 1503 (10th Cir. 1984) (citations omitted).

[42] *See id.* ("[S]uch intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication.).

Court will only address Plaintiff's property interest when determining whether Defendants provided the appropriate level of process.

*Appropriate Level of Process*

"The root requirement" of the due process clause is that an individual be afforded "an opportunity for a hearing before he is deprived of any significant property interest."[43]  "[T]he interpretation and application of the Due Process Clause are intensely practical matters and [] the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."[44]  With regard to school decisions, different standards are used depending on whether the school makes an academic judgment or a disciplinary determination.[45] There are less stringent procedural requirements in the case of academic dismissals.[46] "[T]o satisfy Due Process prior to termination or suspension of a student for deficiencies in meeting minimum academic performance, [school authorities] need only advise that student with respect to such deficiencies in any form."[47]  Disciplinary actions require "that the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[48] The "hearing"

---

[43] *Loudermill*, 470 U.S. at 542 (citation omitted).

[44] *Goss v. Lopez*, 419 U.S. 565, 578 (1975) (quotation marks and citation omitted).

[45] *Harris*, 798 F.2d at 423.

[46] *Bd. of Curators of Univ. of Miss. v. Horowitz*, 435 U.S. 78, 85-87 (1978).

[47] *Gaspar*, 513 F.2d at 851.  *See also Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1185 (10th Cir. 2000) (finding that with regard to academic dismissals, due process only requires prior notice of dissatisfaction with the student's performance and that the school's decision to dismiss must be careful and deliberate).

[48] *Goss*, 419 U.S. at 581 (addressing a ten-day suspension).

before the school need not be formal, but may be an "informal give-and-take," and "[t]here need be no delay between the time 'notice' is given and the time of the hearing."[49]

In this case, the parties disagree as to whether Defendants' decision was academic or disciplinary. Defendants contend that although Plaintiff's wrongful and deceptive conduct was the triggering event for his dismissal, the case involves a determination about his qualifications for admission to KU's School of Law. Plaintiff asserts that his expulsion, based on falsification and misrepresentation on his law school application, is disciplinary. He further argues that Defendants communicated with him about "disciplinary procedures." The Court agrees with Plaintiff and concludes that Defendants' action was a disciplinary one.

Defendants' procedure, however, satisfied due process requirements for disciplinary dismissals. As noted above, disciplinary actions require that an individual be given notice of the charges and the opportunity to be heard regarding those charges. A formal hearing is not necessarily required. Dean Agrawal's May 26, 2010, letter provided Plaintiff notice that she intended to dismiss him, effective June 8, 2010, for "falsification, misrepresentation, and failure to supply complete, accurate and truthful answers" in his application for admission to the School of Law. Her four-page letter specifically detailed the charges against him and the events that had occurred throughout the school year with regard to those charges. This letter also stated that Plaintiff could provide a written response by Thursday, June 3, 2010, if he believed that his dismissal was inappropriate or if there were mitigating circumstances. Thus, her letter provided notice of the charges against him and allowed him time to respond to those allegations.

---

[49] *Id.* at 582-84.

Plaintiff provided his response to her May 26, 2010, letter on May 27, 2010. Plaintiff complained that the appropriate procedures were not followed. Plaintiff failed to address the substantive allegations against him, although he was given the opportunity, and failed to controvert the charges against him. Indeed, the charges were true. There is no dispute that Plaintiff lied on his law school application and that he did not disclose his criminal history. After Dean Agrawal received Plaintiff's letter, she noted in her June 7, 2010, dismissal letter that he failed to address the charges against him. Thus, he was heard on the issue.

Plaintiff argues that his due process rights were violated because the School of Law failed to follow its (and the University of Kansas's) own rules and regulations in dismissing him. The law is clear, however, that the failure to follow its own regulations does not, by itself, give rise to a constitutional violation.[50] Accordingly, Plaintiff's contention that Defendants violated his due process rights by failing to follow internal procedures is without merit.

In *Goss*, the Supreme Court was concerned with a student's right to "avoid unfair or mistaken exclusion from the educational process,"[51] and stated that "it would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his dereliction and to let him tell his side of the story in order to make sure than an injustice is not done."[52] In this case, Defendants

---

[50] *Trotter*, 219 F.3d at 1185. *See also Horowitz*, 435 U.S. at 92 n. 8; *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986).

[51] *Goss*, 419 U.S. at 579.

[52] *Id.* at 580. "The Due Process Clause will not shield [an individual] from suspensions properly imposed . . . ." *Id.* at 579. Plaintiff argues that he was not afforded due process protections, but he primarily complains that Defendants did not follow the internal procedures that he deemed would be appropriate to his case. Plaintiff does not controvert the fact that he lied on his law school application. Instead, he attempts to explain why he did not disclose his previous offenses. In *Goss*, the Supreme Court noted that an individual is entitled to present his side of the story if he *denies* the charges against him. *Goss*, 419 U.S. at 581.

communicated with Plaintiff about the charges against him and made an effort to hear his side of the story as to why he lied on his law school application. Thus, Defendants provided Plaintiff with the appropriate level of process. The Court concludes that there is not a genuine issue of material fact as to whether Defendants' conduct violated Plaintiff's due process rights. It did not. Accordingly, the Court grants Defendants summary judgment on this claim.[53]

### B. Gross and Wanton Negligence[54]

Plaintiff claims that Defendants Mazza, Agrawal, Rohleder-Sook, and McCray Pearson had a legal duty to know the basic constitutional rights of students, and they violated this duty when they dismissed him from law school without providing due process of law. He claims that Defendants intentionally disregarded, with malicious intent, his constitutional rights. The Court previously found that Defendants provided Plaintiff with adequate process. Thus, they did not breach a duty of due process. Furthermore, even if the Court could construe Defendants' conduct as a breach, which it cannot, there is no evidence that Defendants acted with wantonness. Gross and wanton negligence requires evidence that there was "a realization of the imminence of danger and reckless disregard or complete indifference to the probable consequences."[55] In this case, there is no evidence of such conduct by Defendants. Thus, Defendants are entitled to summary judgment on this claim.

### C. Tortious Interference with Business Advantage

---

[53] The Court finds it unnecessary to address Defendants' qualified immunity argument.

[54] The Court will not address Defendants' discretionary function immunity argument or their estoppel argument as to Plaintiff's state law claims. Instead, the Court will consider the merits of Plaintiff's claims.

[55] *Boaldin v. Univ. of Kan.*, 242 Kan. 288, 293, 747 P.2d 811, 814 (1987) (citation omitted).

Plaintiff asserts that Defendants Mazza, Agrawal, Rohleder-Sook, and McCray Pearson interfered with his legitimate business expectancy of having a successful law career. The required elements for a tortious interference with business advantage claim are:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[56]

In addition, a plaintiff must demonstrate that the defendant acted with malice.[57] Malice is defined as acting "with actual evil-mindedness or specific intent to injure."[58]

Plaintiff cannot demonstrate a genuine issue of material fact as to the elements of this claim. First, Plaintiff cannot demonstrate a reasonable expectancy in practicing law. He also cannot demonstrate that but for the conduct of Defendants, he was reasonably certain to have realized this expectancy. Finally, he cannot demonstrate intentional misconduct, or malice, by Defendants. Thus, Defendants are entitled to summary judgment on this claim.

### D. Civil Conspiracy

Plaintiff also claims that Defendants Mazza, Agrawal, Rohleder-Sook, and McCray Pearson conspired with each other to deny his due process rights. Civil conspiracy requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result

---

[56] *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986). *See also Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1242, 1262-63 (10th Cir. 2005) (citing *PulseCard, Inc. v. Discover Card Servs., Inc.*, 917 F. Supp. 1488, 1498 (D. Kan. 1996)).

[57] *Pepsi-Cola Bottling Co.*, 431 F.3d at 1263 (citation omitted).

[58] *Turner*, 240 Kan. at 8, 722 P.2d at 1113.

thereof."[59]  The Court eliminated the alleged procedural due process violation by its discussion above.  Thus, there is no object to be accomplished by these Defendants.  Furthermore, there is no evidence of unlawful overt acts or evidence of a meeting of the minds.  Thus, Plaintiff cannot demonstrate that there is a genuine issue of material fact as to whether Defendants engaged in civil conspiracy.  Accordingly, the Court grants Defendants summary judgment on this claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 153) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Surreply (Doc. 186) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 18th day of April, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[59] *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153, 166 (1984).